IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ALLEN NELMS, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 3:07-CV-1870-B |
| § | ECF |
| CITY OF WAXAHACHIE, et al., § | |
| § | |
| Defendants. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the District Court's June 19, 2008 order of reference, the Rule 12(b)(6) Motion to Dismiss, or in the Alternative Rule 56 Motion for Summary Judgment ("Motion") (doc. 24) of Sgt. Ricky Wilson ("Wilson"), Unidentified Officers John Does ##1 & 2 ("Police Officers"), the City of Waxahachie ("City"), and the City of Waxahachie Police Department ("Police Department") (collectively "Defendants"), filed November 9, 2007, was referred to this Court for Findings, Conclusions, and Recommendation. Defendants submitted extrinsic evidence; therefore, this Court notified the parties on July 21, 2008, that it would consider the motion as a Motion for Summary Judgment brought pursuant to FED. R. CIV. P. 56(c). Although Plaintiff Allen Nelms ("Plaintiff") failed timely to respond to the Motion, Plaintiff filed a Response on August 4, 2008, after the notice from the Court. Defendants filed a reply on August 18, 2008.

Plaintiff sues the City, the Police Department, Wilson, and the Police Officers, alleging civil rights violations under 42 U.S.C. § 1983 and a state law intentional tort. Plaintiff claims that the City and Police Officers engaged in an unlawful search and seizure, excessive force, race and color discrimination, intentional infliction of emotional distress, and negligent training or hiring. In an unsworn complaint, Plaintiff, who is represented by counsel, alleges that his girl friend called 911

and asked for an ambulance because he was suffering from diabetic shock. He claims that two unidentified police officers and Wilson entered his home without permission and in violation of his direct orders. He claims the officers violated his civil rights by an unlawful search and seizure and by using excessive force, including two shots from Tasers. He asserts that the officers acted in bad faith and were motivated by racial discrimination. Additionally, he claims the officers were acting pursuant to unlawful policies of the Police Department and the City. Plaintiff alleges Negligence and Inadequate Training or Hiring by the Police Department and the City. Also, Plaintiff alleges a state law claim of intentional infliction of emotional distress. Plaintiff seeks actual and exemplary damages from all the defendants. Additionally, Plaintiff seeks injunctive relief prohibiting Defendants from engaging in the future unlawful use of force against citizens with Taser weapons until such time that additional training and education for the officers can be completed.

On February 4, 2008, Defendants moved for Protection from Discovery, or in the alternative, Limitation on Discovery (doc. 14). This Court granted the motion with respect to the individual officers until their entitlement to qualified immunity could be determined, but did not limit discovery of their identities (doc. 17). The Court held that "Defendants shall identify the John Doe Officers and provide any other discovery to which the parties have agreed. All other discovery against the Police Officers is stayed at this time." (*Id.*) However, the Court specifically held that Defendants' motion for protection from discovery was denied with respect to the City.

On August 4, 2008 Plaintiff filed what purported to be "Affidavits" of Plaintiff and his girl friend, Josie Edwards ("Edwards") (doc. 31). However, the Affidavits are neither signed, dated, nor properly notarized. On September 17, 2008, this Court noted the deficiencies in the "Affidavits" and ordered Plaintiff to supplement the "Affidavits" by affidavits properly signed, dated, and

notarized within ten days of the order. Plaintiff failed to submit affidavits within the time allowed and apparently intends to stand on his deficient response to Defendants' Motion. Plaintiff is represented by counsel. The petition is not verified. Plaintiff has not controverted Defendants' statement of facts with signed, dated affidavits sworn under penalty of perjury before a notary public. Accordingly, the Court must take Defendants' statement of facts as undisputed.

## Statement of Undisputed Facts

1. On April 28, 2007, at 4:37 a.m., the Police Department received a 911 call from 720 Perry Ave. in Waxahachie, Texas. Defendants submitted an audio recording of the 911 call in compact disc ("CD") format.[1] The CD reveals some delay, followed by a female voice mumbling incoherent words. A few seconds later, a male voice is heard yelling "Joe." The female immediately responded "okay" and hung up the phone.

2. Officers Chris Eadler ("Eadler") and Anthony Parrish ("Parrish") were dispatched to investigate the "hang-up 911 call." (App. 2 & 11.) Dispatch informed the responding officers that a person could be heard on the phone, that someone was yelling in the background, and that the call was disconnected. (*Id*.) The caller did not advise the 911 operator of any medical emergency, and in turn, no such information was conveyed to the officers. The officers suspected this might be a domestic disturbance, one of the most dangerous calls an officer must investigate. (*Id*.)

3. Eadler arrived at the residence at 720 Perry Ave. first, and he observed lights on inside the house. (App. 2.) The front door was open and a black male, later identified as Plaintiff, stood in his undergarments yelling at Eadler to "get out of here; I don't need you here." (*Id*.) When Eadler inquired what was going on, Plaintiff slammed the door and retreated inside. (*Id*.) Eadler had retreated behind a parked car in the driveway when a white female later identified as Edwards, Plaintiff's girlfriend, opened the side door and ran toward Eadler, screaming and crying. She said that Plaintiff was diabetic, failed to take his medication, and was "getting crazy." (App. 3.)

4. Eadler thought a domestic disturbance might be occurring and called for his back up to hurry. (App. 3, 11, 19, 22, and 27.) Edwards advised Eadler that she did not know whether Plaintiff had taken his necessary medication that day. (App. 3.) Plaintiff returned to the front door and resumed yelling at Eadler in an aggressive manner. (App. 3-4.) Plaintiff continued slamming the door, throwing his hands in the air, and being verbally aggressive.

---

[1] Defendants provided the CD to the Court in its courtesy copy and also provided it to Plaintiff's counsel.

(App. 4-11.) Parrish arrived as back up.

5. Officers Eadler and Parrish approached the front door. (App. 4 and 11.) Plaintiff stood at the door and continued yelling at the officers. (Id.) The officers considered Plaintiff a potential danger to himself, to Edwards, to the officers, and to the medical personnel who had also arrived. (*Id*.) The officers told Plaintiff they were there to investigate, to determine what was happening, and to provide Plaintiff with medical assistance. (*Id*.) They told Plaintiff that he would have to calm down if he needed medical assistance because, otherwise, they would not allow medical personnel to enter the house. (*Id*.) Plaintiff responded with swear words and told the officers to come and get him. (*Id*.)

6. When Eadler approached the front door, Plaintiff slammed it. (App. 4.) Eadler kicked the door open and drew his Taser device. (App. 4-5 and 12.) Plaintiff ran to his bedroom and the officers pursued him, fearing he was going there to obtain a weapon. (App. 5 and 12.)

7. Inside the bedroom, Plaintiff continued yelling at the officers who then considered Plaintiff a potential danger. (App. 5-6 and 13-14.) The officers again tried to calm Plaintiff with words. (App. 6, 13, 22, and 28.) They asked Plaintiff to lie down on the floor on his stomach so that they could ensure that he did not have any weapons and would not be a danger. (*Id*.) Plaintiff refused, and he became increasingly aggressive. (*Id*.) The officers then told Plaintiff that he could turn over on his stomach on the bed. (*Id*.) To assist Plaintiff, Eadler reached to grab Plaintiff's left wrist to turn him over. Plaintiff yelled at Eadler to release his arm.

8. Plaintiff, who sat in a threatening position with his fists clinched, then lunged at Eadler. (App. 6, 13, 23, and 28.) Eadler released Plaintiff's left wrist and discharged his Taser device, striking Plaintiff in the left frontal area of his torso. (*Id*.) Parrish also discharged his Taser device, but turned his device off when he realized (within seconds) that both officers had discharged their Taser devices. (App. 14.) Both prongs of Eadler's Taser device made contact with Plaintiff. Only one prong of Parrish's Taser struck Plaintiff, thus disabling Parrish's device from transmitting current. (App. 14, 23, and 28.)

9. Plaintiff continued to refuse to cooperate even after he had been struck by the Taser. (App. 7 and 15.) Plaintiff eventually complied when the officers threatened to use the Taser again. He stopped resisting, turned over, and placed his hands behind his back. (App. 7, 15, 24, and 29.) At Eadler's request, Officer Chance Huckabee handcuffed Plaintiff. (*Id*.) Once Plaintiff was restrained, medical personnel assessed him. (*Id*.) Eadler spoke with Edwards, who advised that she had been afraid Plaintiff was going to hurt her before the officers arrived, but assured them that everything would be fine now that Plaintiff's blood sugar was normal. (App. 7.)

**Rule 12(b)(6) Legal Standard**

The Federal Rules of Civil Procedure authorize the dismissal of a complaint for "failure to

4

state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When a court considers a motion to dismiss, the court accepts as true all well-pleaded facts and views those facts in a light most favorable to the Plaintiff. *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations; however, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions. *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1964–65 (2007). A formulaic recitation of the elements of a cause of action is not sufficient. *Id.* Factual allegations must be sufficient to raise a right to relief above the speculative level. *Id.* When a court rules on a motion to dismiss, the court does not evaluate a plaintiff's likelihood of success; rather, the Court only determines whether a plaintiff has stated a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).

### Claims Against the Police Department

Defendants seek dismissal of Plaintiff's claims against the Police Department on the grounds that the Police Department is not a jural entity. A plaintiff may not bring a civil rights claim against a servient political agency or department unless such agency or department enjoys a separate and distinct legal existence. *See Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313-14 (5th Cir. 1991). Unless the true political entity has taken explicit steps to grant the servient agency with jural authority, the agency cannot engage in any litigation except in concert with the government itself. *Darby*, 939 F.2d at 313. Plaintiff fails to show that the police department has been granted the capacity to sue or be sued. His suit seeks relief from an entity which does not exist for such purposes. *Id.* at 314. Plaintiff is represented by counsel. The deadline for filing amended pleadings expired on June 9, 2008. Permitting Plaintiff to amend his complaint would serve no purpose

5

because Plaintiff named the City, a jural entity, as a defendant. Accordingly, Plaintiff's claims against the Police Department should be dismissed with prejudice, as a matter of law, for failure to state a claim.

### Plaintiff's Claim for Exemplary Damages Against the City

Plaintiff seeks exemplary damages against all the defendants. Defendants seek dismissal of Plaintiff's claims for exemplary damages against the City. Municipalities are immune from punitive damages under 42 U.S.C. § 1983. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). As a matter of law, Plaintiff's claims for exemplary damages against the City should be dismissed with prejudice for failure to state a claim.

### Plaintiff's Claims Against the Police Officers and Wilson

First, the Court notes that Plaintiff has sued the Police Officers and Wilson only in their official capacities as Police Officers of the City, not as individuals. "Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Ky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. New York City Dep't. of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)). A § 1983 suit against defendants only in their "official capacity" does not involve personal liability to the individual defendants. As a result, defenses such as qualified immunity, which only protect defendants in their individual capacities, are unavailable in official-capacity suits. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) ( "[T]he only immunities available to the defendant in an official-capacity action are those that the governmental entity possesses."); *see also Johnson v. Kegans*, 870 F.2d 992, 998 n. 5 (5th Cir. 1989) ("Immunity does not bar suits against defendants in their official capacities.").

When the governmental entity receives notice and an opportunity to respond, an

6

official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the officers personally. The real party in interest is the entity. Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the governmental entity itself. *Graham*, 473 U.S. at 166 (citations omitted); *see also Hafer*, 502 U.S. at 25 (reiterating the reasoning of *Graham* ); *Burge v. Parish of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999) ("Unlike government officials sued in their individual capacities, municipal entities and local governing bodies do not enjoy immunity from suit, either absolute or qualified, under § 1983."). Plaintiff has named the Police Officers and Wilson only in their "official capacities." Plaintiff has pled and will have to prove that the City had customs or policies of unconstitutional search and seizure, excessive force, and racial discrimination. *See Monell*, 436 U.S. at 694 ("[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."). In *Graham*, the United States Supreme Court detailed the particular elements of an official-capacity claim as follows: "More [than a deprivation of a federal right] is required in an official-capacity action, however, for a governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation, . . . thus, in an official-capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law. *Graham*, 473 U.S. at 166 (citations omitted).

   Plaintiff has named the City, the employer of the Police officers and Wilson, as a Defendant. Accordingly the official capacity claims against the police officers are redundant and serve no

purpose. Dismissal of the official capacity claims against the Police Officers and Wilson is appropriate. *See Flores v. Cameron County, Tex.*, 92 F.3d 258, 261 (5th Cir. 1996). Accordingly, the Court recommends that Plaintiff's claims against the Police Officers and Wilson be dismissed with prejudice.

## **Rule 56 Summary Judgment Legal Standard**

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when the pleadings and record evidence show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Only disputes about material facts will preclude the granting of summary judgment. *Id.*

The burden is on the summary judgment movant to prove that no genuine issue of material fact exists. *Latimer v. Smithkline & French Labs.,* 919 F.2d 301, 303 (5th Cir. 1990). If the non-movant bears the burden of proof at trial, the summary judgment movant need not support its motion with evidence negating the nonmovant's case. Rather, the movant may satisfy its burden by pointing to the absence of evidence to support the nonmovant's case. *Id.; Little,* 37 F.3d at 1075.

Once the movant has met its burden, the nonmovant must show that summary judgement is not appropriate. *Little,* 37 F.3d at 1075 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986)). "This burden is not satisfied with 'some metaphysical doubt as to material facts,' . . . by 'conclusory allegations,' . . . by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)). The nonmoving party must "come forward with 'specific facts showing that there is a *genuine issue for trial.*'"

8

*Matsushita,* 475 U.S. at 587 (emphasis in original) (quoting FED. R. CIV. P. 56(e)). To determine whether a genuine issue exists for trial, the court must view all of the evidence in the light most favorable to the nonmovant, and the evidence must be sufficient such that a reasonable jury could return a verdict for the nonmovant. *Munoz v. Orr,* 200 F.3d 291, 302 (5th Cir. 2000); *Anderson,* 477 U.S. at 248.

## Claims Against the City

### Unconstitutional Search and Seizure, Excessive Force, and Racial Discrimination

Plaintiff sues the City based upon allegations of the police officers' unconstitutional search and seizure, excessive force, and racial discrimination. Plaintiff asserts that "the policy or customs maintained by the . . . are either in the possession of the Defendant's [sic] or common knowledge of the officers and will be revealed in discovery." (Pl.'s Resp. at 19.) However, discovery from the City was not stayed. Plaintiff did not seek an extension of time to respond to the summary judgment motion by "show[ing] by affidavit that it cannot present facts essential to justify its opposition" under FED. R. CIV. P. 56(f).

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against the party.

FED. R. CIV. P. 56 (e)(2). Plaintiff not only failed to provide affidavits explaining the need for additional time to produce facts sufficient to justify his opposition to the Motion pursuant to Rule 56(f), but also failed to respond when the Court ordered him to present supplemental affidavits to correct deficiencies in the unsworn, unsigned, undated affidavits he submitted.

The City is entitled to summary judgment against Plaintiff on his claim against the City for

9

Unlawful Search and Seizure. Plaintiff has failed to show a custom or policy of unlawful searches and seizures, properly supported with proper summary judgment evidence. Moreover, Plaintiff has alleged a single instance rather than a series of unconstitutional seizures resulting from a City policy. This claim should be denied as a matter of law. The same is true for Plaintiff's claims against the City for Excessive Force and Racial Discrimination.

Plaintiff alleges that the City engaged in "unlawful discriminatory practices involving the use of force against Plaintiff because of his race and color due to a persistent and widespread custom or policy promulgated within the Police Department with deliberate indifference and which encourages disparate treatment against minorities within the City of Waxahachie." Plaintiff's unverified complaint cites the findings from the Police Department on the Plaintiff's complaint against the officers as evidence of racial discrimination. A trier of fact could not infer from an investigation unfavorable to Plaintiff that the City had a policy such as that which Plaintiff alleges. Additionally, Plaintiff's unsworn allegation that the trier of fact can infer a policy of racial discrimination because Plaintiff lives on the east side of town (Pl.'s Resp. at 17) is not sufficient to show the existence of City policies permitting police officers to use excessive force and discriminate against black citizens. "Isolated violations are not the persistent, often repeated constant violations that constitute custom and policy" as required for municipal section 1983 liability. *Bennett v. City of Slidell*, 728 F.2d 762, 768 n. 3 (5th Cir. 1984). *See also Coon v. Ledbetter,* 780 F.2d 1158, 1161 (5th Cir. 1986); *Lopez v. Houston ISD,* 817 F.2d 351, 353-54 (5th Cir. 1987); *Hamilton v. Rodgers,* 791 F.2d 439, 443-44 (5th Cir. 1986). Plaintiff has presented no competent summary judgment evidence that the City had any such policy or custom that resulted in the infringement of Plaintiff's constitutional rights, or that any such policy or custom of the City

was adopted or continued by its policymakers in "deliberate indifference to the constitutional rights of its inhabitants." *City of Canton v. Harris,* 489 U.S. 378, 392 (1989). Plaintiff's claims against the City for "unlawful discriminatory practices involving the use of force against Plaintiff because of his race and color due to a persistent and widespread custom or policy promulgated within the Police Department with deliberate indifference and which encourages disparate treatment against minorities within the City of Waxahachie" should be denied as a matter of law.

### **Negligent Training and Supervision**

A municipality is not liable under the doctrine of *respondeat superior*. *Monell*, 436 U.S. at 691. To succeed on a claim for supervisory liability, a plaintiff must show that (1) the supervisor engaged in wrongful conduct, (2) a causal link exists between this wrongful conduct and the violation of the plaintiff's rights, and (3) the wrongful conduct amounts to deliberate indifference. *See Smith v. Brenoettsy*, 158 F.3d 908, 911-12 (5th Cir. 1998); *see also Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 454 n. 8 (5th Cir. 1994) (en banc) (stating that deliberate indifference standard applies to all cases alleging a constitutional violation). A supervisor engages in wrongful conduct when he either (1) fails to train or supervise his subordinates or (2) implements a policy so deficient that the policy itself is a repudiation of a citizen's constitutional rights. *See Smith*, 158 F.3d at 911-12; *Baker v. Putnal*, 75 F.3d 190, 199 (5th Cir. 1996); *Thompkins*, 828 F.2d at 304-05. A plaintiff must identify a deficiency in a training program closely related to the injury complained of and must further show that the injury would have been avoided "under a program that was not deficient in the identified respect." *City of Canton v. Harris*, 489 U.S. 378, 391 (1989). The identified inadequacy "must be obvious and obviously likely to result in a constitutional violation." *Id.* (citing *City of Canton*, 489 U.S. at 390 n.10). Normally, proof of a single instance -- rather than

11

a pattern of similar violations -- will not sustain a plaintiff's claim that such a lack of training or supervision caused a violation of his constitutional rights. *Id.* (citing *Snyder v. Trepagnier,* 142 F.3d 791, 798-99 (5th Cir. 1998). A supervisor acts with "deliberate indifference" when he disregards a known or obvious consequence of his action. *Bd. of the County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 412 (1997). "Deliberate indifference" is a stringent standard of fault, permitting courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversights." *See id.; Gonzalez v. Ysleta Indep. Sch. Dist.*, 996 F.2d 745, 756 (5th Cir. 1993).

Again, Plaintiff has not submitted any competent summary judgment evidence that the City fails to train and supervise officers or that it has such a custom or policy, adopted or continued, in deliberate indifference to the constitutional rights of its citizens. Accordingly, Plaintiff's Claims for Negligent Training and Supervision based on the officers' actions should be denied as a matter of law.

## Injunctive Relief

Plaintiff requests the Court to impose an injunction on "Defendant" prohibiting the "future unlawful use of force against citizens with Taser weapons." The claim for injunctive relief is governed by the United States Supreme Court's decision in *Rizzo v. Goode*, 423 U.S. 362, 372 (1976). In *Rizzo*, the plaintiffs alleged widespread illegal and unconstitutional police conduct aimed at minority citizens and against city residents in general. The Court held that past wrongs do not in themselves amount to the real and immediate threat of injury necessary to make out a case or controversy. *Id.* Plaintiff's assertion that he may again be subjected to police officers' illegal use of a Taser device does not create the actual controversy that must exist for injunctive relief to

12

be entered. Accordingly, Plaintiff's claim for injunctive relief should be denied as a matter of law.

## State Law Claim

Plaintiff claims he is entitled to recover for intentional infliction of emotional distress. This Court recommends dismissal or denial of Plaintiff's federal claims. Accordingly, the District Court should decline to exercise supplemental jurisdiction over the remaining state law claim pursuant to 28 U.S.C. § 1367(c)(3). Consequently, Plaintiff's state law claim should be dismissed without prejudice. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726 (1966) ("If the federal claims are dismissed before trial . . . the state claims should be dismissed as well.").

## Recommendation

This Court recommends that the District Court:

1. Dismiss with prejudice Plaintiff's claims against the Police Department, a non-jural entity, for failure to state a claim;

2. Dismiss with prejudice Plaintiff's claim for punitive damages against the City as an unrecoverable element of damages;

3. Dismiss with prejudice Plaintiff's claims against the Police Officers and Wilson as redundant of his claims against the City;

4. Grant summary judgment in favor of the City on Plaintiff's claims that the officers engaged in an unconstitutional search and seizure, used excessive force, and racially discriminated against Plaintiff based on his failure to raise a genuine issue of material fact with respect to unconstitutional City policies which caused constitutional violations;

6. Grant summary judgment in favor of the City on Plaintiff's claim that the City had a policy of negligent training and supervision of the police officers based on Plaintiff's failure to raise a genuine issue of material fact that such a policy existed;

7. Grant summary judgment on Plaintiff's claim for injunctive relief based on the lack of an actual case and controversy; and

8. Dismiss Plaintiff's pendant state law claim without prejudice.

13

So Recommended, October 28, 2008.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

.

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).